## IN RE HEROULT.

PATENTS; REISSUE.

1. Applicants for patents usually act through solicitors or attorneys, and their inadvertence, accidents, or mistakes, if such in fact, are remediable, under the statute (U. S. Rev. Stat. sec. 4916, U. S. Comp. Stat. 1901, p. 3393) permitting reissue when it is clear that there is no fraudulent or deceptive intent, or attempt to destroy an intervening right.  (Following *Re Briede*, 27 App. D. C. 298.)

2. It is not an invariable rule that a patent for a machine will not sustain a reissue for a process.

3. Where the foreign inventor of a process for making metals in an electric furnace, although fully disclosing the process in his original application, made specific claim only for an electric furnace, and was granted a patent therefor, and, on being thereafter advised that his patent did not cover the process, without unnecessary delay and before intervening claims arose, applied for a reissue covering the process as well as the furnace, copying verbatim the description of the process contained in his original application, and showing by affidavits that he had supposed his patent would cover whatever of novelty he had described, it was *held*, reversing the decision of the Commissioner, that the applicant was entitled to a reissue.

4. Any doubt that may exist as to whether a reissue is for the same invention described in the original patent should be resolved in favor of the applicant,—especially if it is too late to file an independent application.

5. No absolute right of property is conferred by the grant of a patent; but the patentee is merely put in a position to assert his prima facie right in case of infringement, and to have the same adjudicated in a court where extrinsic evidence may be heard, and not confined, as in this court, to a review of a decision of the Patent Office upon the record as made up therein. (Following *Re Thomson*, 26 App. D. C. 426.)

No. 369. Submitted January 8, 1907. Decided February 5, 1907.

HEARING on an appeal from a decision of the Commissioner of patents rejecting an application for the reissue of a patent.

*Reversed.*

The COURT in its opinion stated the facts as follows:

This is an appeal from the decision of the Commissioner of Patents rejecting an application for the reissue of a patent.

The applicant, Paul L. T. Heroult, is a citizen of the Republic of France, and a skilled metallurgist. Having invented a new electrical process for obtaining soft metals, consisting of substances which tend to combine with carbon, through the avoidance of the introduction of carbon from the electrode used therein, and a furnace to carry out said process, the applicant obtained a patent therefor in France. Being then in one of the provincial towns, the inventor instructed an attorney in Paris

to secure patents for his invention in other countries. Pursuant thereto an application containing the description of the French patent was filed in the United States Patent Office. The patent issued in due course, with the following single claim:

"5. In an electric furnace, the combination of a crucible adapted to carry a bath of molten material, two electrodes supported above it and connected in series, a conductor in position to effect contact with material contained in the crucible, and a volt-meter in shunt between one of said electrodes and said conductor, said conductor consisting of a rod passing through the refractory material of the crucible and projecting outside and inside of the same whereby the portion of the rod which is melted is replaced by molten material which fills up the space and thus insures good conductivity."

Having discovered that his process was not protected by the patent so obtained, the inventor, something more than two years after his patent issued, filed the present application for reissue, presenting five claims, the 5th one of which is the claim above set out as contained in the patent. The other four claims are the following:

"1. In the manufacture of soft metals such as chromium, manganese, or iron, by means of an electric furnace, the method which consists in playing two separate arcs in series through an insulating layer of slag between the metal on the one hand, and the two carbon electrodes on the other hand.

"2. In the manufacture of metals having a strong affinity for carbon, such as chromium, manganese, iron, or the like, by means of an electric furnace with carbon electrodes, the method which consists in submitting the charge to the heat of electric arcs between the electrodes and the metal itself, and regulating the arcs so as to avoid contact of the electrodes with the metal.

"3. In the manufacture of metals having a strong affinity for carbon, such as chromium, manganese, iron, or the like, by means of an electric furnace with carbon electrodes, the method which consists in passing the current from one electrode into and through the metal, thence through another electrode,

and regulating the position of each electrode separately, so as to avoid contact thereof with the metal.

"4. In the manufacture of metals having a strong affinity for carbon, such as chromium, manganese, iron, or the like, by means of an electric furnace with carbon electrodes, the method which consists in maintaining a layer of nonconducting slag between the end of an electrode and the molten metal, so as to avoid the combining of the carbon of the electrode with the metal."

In the affidavit accompanying the application the applicant said that the letters patent are inoperative for the reason that the specification thereof is defective and insufficient, and that such defect or insufficiency consists particularly in the failure of the claim to describe applicant's real invention; and deponent further says that the error which renders such patent so inoperative arose from inadvertence, accident, or mistake, and not in fraudulent or deceptive intention on the part of the deponent.

Under the French system a patent is construed to cover whatever of novelty is described in the specification. The affidavit recites that the applicant was ignorant of the difference between the French patent law and that of the United States, and believed that, being the first to disclose the real invention, his patent would secure to him whatever was new in the same as described. That visiting the United States, and discussing the patent with his present New York attorneys, he learned for the first time of the practical inoperativeness of his patent, and was advised that he might apply for reissue to correct the insufficiency. That he was familiar with the state of the industry in the United States; and that to the best of his knowledge and belief his real invention as now claimed has not been in use therein up to the present time. The statement is respect of his previous knowledge and belief as to the protection of his patent, and of the advice given him by his American counsel, was supported by the affidavit of one of them.

*Mr. Charles H. Duell, Mr. Arthur C. Fraser, Mr. Domingo A. Usina,* and *Mr. L. S. Bacon* for the appellant.

*Mr. Fairfax Bayard* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It is apparent that the patent as issued is of little or no practical value; and there is no question but that the process is both novel and valuable. This is shown in recent publications by writers of established standing in Europe and America, to which our attention has been called. These show also that the process has been largely applied by the inventor and his licensees or assignees. The statement of the invention in the specifications of the French and American patents contains a particular description of the process, from which anyone skilled in the art could utilize the invention. They also describe the apparatus of the claim of the latter patent, as used in the process. The process is first described, and then it is said: "Such is the principle of the invention which is carried out" in the apparatus immediately after described.

So thoroughly was the process described that the description was copied verbatim in the reissue application. In view of the established skill and learning of the applicant in the art, and from all the facts and circumstances disclosed, we think it apparent that he considered the process as the real or main invention, and that his failure to make specific claims therefor was due to inadvertence, accident, or mistake. It is unnecessary to discuss the facts as to diligence in applying for the reissue, as that has been conceded by the tribunals of the Office. It is sufficient to say that the applicant acted without unnecessary delay, and there was no intervening claim.

The grounds of the Primary Examiner's decision are stated as follows:

"Claims 1 to 4 inclusive are for a process of making metals in an electric furnace, in which the apparatus may differ widely from the specific structure covered by claim 5. The process of these claims was fully disclosed in the original specifications. No anticipatory references are known for these method claims,

and it is generally conceded, in the art to which this application relates, that the present applicant is the inventor of the process claimed. The sole ground for rejection from which the appeal is taken is that the method of making metals is a different invention from the furnace which forms the subject-matter of the original claim, and that neither the patent nor the correspondence in the case contains a suggestion that the process of claims 1 to 4 was a part of applicant's invention."

As indicated above, we cannot agree that the description of the patent contains no suggestion that the process of claims 1 to 4 was a part of applicant's invention. If, as declared, "the process of these claims was fully disclosed in the original specification," and was novel, they would either have been allowed if set out along with the claim made, or a divisional application required under rule 41, as then in force. Having disclosed the process, the failure to claim was either intentional, or the result of inadvertence, accident, or mistake, for which section 4916, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3393) furnishes a remedy.

The Examiners-in-Chief, in affirming that decision on appeal, did so on the ground that a reissue can only be granted for the same issue as the original patent, and say: "The only thing claimed in the original patent was the furnace itself. While the applicant, being a foreigner, may have been mistaken as to the scope of his patent when granted, he was not acting without the advice of competent counsel. It is hardly to be believed that they applied for and took out a patent for the furnace when they intended to apply for a patent for the process." The question is, however, Was this omission to make claims covering the novel process disclosed in the application, the result of inadvertence, mistake, or accident? Applicants usually act through solicitors or attorneys, and their inadvertence, accidents, and mistakes, if such in fact, are remediable under the statute permitting the reissue when it is clear that there is no fraudulent or deceptive intent, or attempt to destroy an intervening right. Re Briede, 27 App. D. C. 298, 301.

The Commissioner, who in turn affirmed the decision of the

Examiners-in-Chief, stated the grounds of his decision as follows:

"These claims have been refused on the ground that they cover a different invention from that of the patent.

"It is contended by appellant that a reissue may be granted for subject-matter which was intended to be claimed in the original patent. The intention to claim the process is alleged to be shown in the present case by the fact that the process covered by claims 1, 2, 3, and 4 is described in the patent. It is stated that the applicant, being a foreigner, was of the impression that the description in a patent determined its scope, and that, therefore, the patent as granted covered the process described. Having discovered that the patent did not cover the process described, patentee now comes asking for a reissued patent with claims to the process.

"The question of whether there was an intention to claim the process in the original patent does not appear to have any material bearing on the present case. It is clear that the claim of the patent was for a machine, and it is well established that a patent for a machine will not sustain a reissue for a process."

Assuming, then, that the invention of the process was fully described in the original application; that it was the original intention of the applicant to secure protection for his entire invention through a patent; and that the failure to do so through specific claims was the result of inadvertence, accident, or mistake, is it true that the patent limited in claim to a machine will not sustain a reissue for the process? The Commissioner's conclusion that it will not is rested upon the cases of *James* v. *Campbell,* 104 U. S. 356, 26 L. ed. 786; *Heald* v. *Rice,* 104 U. S. 737, 26 L. ed. 910; and several others referring to them. We do not understand those decisions as establishing such an invariable rule. In *James* v. *Campbell* the patent, held void on all points involved, was a second reissue, in 1870, of a patent granted in 1863. The invention was declared to be a very narrow one, and the two claims of the original patent were for specific machines. The application for the last reissue made many changes in the specifications, materially

enlarging them and the apparatus claims, and adding a new claim for the process. The court expressly declared that an inspection of former patents showed that the process could not be lawfully patented because anticipated. In regard to this process it was also said: "Leaving out of view the history of the art prior to the invention claimed by the patentee, what possible pretense can there be for contending that the general process was part of the invention which formed the subject of the original patent? Suppose it to be true that Norton was the first inventor of this process, was that process the invention which he sought to secure in the original patent? A patent for a process and a patent for an implement or a machine are very different things. *Giant Powder Co.* v. *California Powder Works,* 98 U. S. 126, 25 L. ed. 77. Where a new process produces a new substance, the invention of the process is the same as the invention of the substance, and a patent for the one may be reissued so as to include both, as was done in the case of Goodyear's vulcanized rubber patent. But a process, and a machine for applying the process, are not necessarily one and the same invention. They are generally distinct and different. The process or act of making a postmark and canceling a postage stamp by a single blow or operation, as a subject of invention, is a totally different thing in the patent law from a stamp constructed for performing that process. The claim of the process in the present case, however, is not so broad as this. It is for the process or act of stamping letters with a postmark and canceling the postage stamp at one and the same blow or operation of the instrument, *in the manner and by the means described and set forth.* Perhaps this claim amounts to no more than a claim to the exclusive use of the patented instrument or device. If it is anything more, it is for a different invention from that described in the original patent. If it is not for anything more, the question is brought back to the instrument or device itself which forms the subject of the patent, and which has been already considered."

In *Heald* v. *Rice,* the application for the reissued patent contained material changes in the description. These having been

stated, the court said: "It appears, then, from the mere reading of the two specifications, that the invention described in the first is for the return flue boiler; while that described in the second, abandoning the claim for the boiler itself, is for a particular mode of using it, with straw as a fuel, by means of an attachment to the furnace door for that purpose. It might well be that Rice was entitled to patents for both, separately, or to one for both inventions. But it is too plain for argument that they are perfectly distinct. A patent, consequently, originally issued for one, cannot lawfully be surrendered as the basis for a reissue for the other. They are as essentially diverse as a patent for a process and one for a compound, as in the case of *Giant Powder Co.* v. *California Powder Works, supra,* where the reissue patent was avoided, although the original application claimed the invention both of the process and the compound. The case comes directly within the principle held in *James* v. *Campbell, supra,* that a patent for a machine cannot be reissued for the purpose of claiming the process of operating that class of machines; because, if the claim for the process is anything more than for the use of the particular machine patented, it is for a different invention."

It is to be observed that in *James* v. *Campbell* the court did not say that a process, and a machine for applying the process, are always distinct and different, but "generally distinct and different."

A rule of the Patent Office has long provided that two or more independent inventions cannot be claimed in one application; and in conformity with the doctrine thought to have been established in the foregoing cases, a specific provision was added thereto, that "claims for a machine and the process in the performance of which the machine is used must be presented in separate applications." Rule 41 (recently amended by striking out the above quoted). The question has recently been reexamined by the Supreme Court of the United States, and the power to make a hard and fast rule of the kind denied. *United States ex rel.Steinmetz* v. *Allen,* 192 U. S. 543, 48 L. ed. 555, 24 Sup. Ct. Rep. 416. It was said that inventions may be so

connected or related as to constitute substantially one invention. "They may be completely independent. *Cockrane* v. *Deener,* 94 U. S. 780, 24 L. ed. 139. But they may be related. They may approach each other so nearly that it will be difficult to distinguish the process from the function of the apparatus. In such case the apparatus would be the dominant thing. But the dominance may be reversed, and the process carry an exclusive right, no matter what apparatus may be devised to perform it. There is an illustration in the *Telephone Cases,* 126 U. S. 1, 31 L. ed. 863, 8 Sup. Ct. Rep. 778." Stating the claim in that case as referring to the art described, as well as the means of making it useful, the opinion was quoted from as follows: "Other inventors may compete with him for the ways of giving effect to the discovery, but the new art he has found will belong to him * * * during the life of his patent. * * * The patent for the art does not necessarily involve a patent for the particular means employed for using it. Indeed, the mention of any means, in the specification or descriptive portion of the patent, is only necessary to show that the art can be used; for it is only the useful arts—arts which may be used to an advantage—that can be made the subject of a patent."

Of *James* v. *Campbell* the court said: That "was a case of reissued patent, and, by express provision of the statute as to reissued patents, no new matter can be introduced in them. In other words, the reissue is to perfect, not to enlarge, the prior patent. Whether the principle of the case applies to related as well as independent inventions is not clear from its language." After quoting several passages from the opinion in that case, the following language was used: "The case, however, indicates what embarrassment and peril of rights may be caused by a hard and fixed rule regarding the separation of related inventions."

Whatever the doctrine of those earlier cases, a more liberal rule has since prevailed in respect of the right of reissue. *Eames* v. *Andrews,* 122 U. S. 40, 59, 30 L. ed. 1064, 1070, 7 Sup. Ct. Rep. 1073; *Topliff* v. *Topliff,* 145 U. S. 156, 171, 36

L. ed. 658, 664, 12 Sup. Ct. Rep. 825; *Hobbs* v. *Beach,* 180
U. S. 383, 394, 45 L. ed. 586, 592, 21 Sup. Ct. Rep. 409.

In *Eames* v. *Andrews* the court said: "If the amended
specification does not enlarge the scope of the patent by ex-
tending the claim so as to cover more than was embraced in the
original, and thus cause the patent to include an invention not
within the original, the rights of the public are not thereby
narrowed, and the case is within the remedy intended by the
statute."

*Topliff* v. *Topliff, supra,* is a leading and most instructive
case on this point. After reviewing very many of the former
decisions, beginning with *Giant Powder Co.* v. *California
Powder Works,* 98 U. S. 126, 25 L. ed. 77, it was said by
Mr. Justice Brown, who delivered the opinion:

"From this summary of the authorities it may be regarded
as the settled rule of this court that the power to reissue may be
exercised when the patent is inoperative by reason of the fact
that the specification as originally drawn was defective or
insufficient, or the claims were narrower than the actual in-
vention of the patentee, provided the error has arisen from in-
advertence or mistake, and the patentee is guilty of no fraud
or deception; but that such reissues are subject to the following
qualifications." After stating these to be, first, that it shall
be for the same invention as the original patent, and that dili-
gence must be exercised, and is ordinarily determined by the
lapse of two years, he proceeded to say:

"To hold that a patent can never be reissued for an enlarged
claim would be not only to override the obvious intent of the
statute, but would operate in many cases with great hardship
upon the patentee. The specification and claims of a patent,
particularly if the invention be at all complicated, constitute
one of the most difficult legal instruments to draw with accuracy,
and, in view of the fact that valuable inventions are often
placed in the hands of inexperienced persons to prepare such
specifications and claims, it is no matter of surprise that the
latter frequently fail to describe with requisite certainty the
exact invention of the patentee, and err either in claiming that

which the patentee had not in fact invented, or in omitting some element which was a valuable or essential part of his actual invention. Under such circumstances, it would be manifestly unjust to deny him the benefit of a reissue to secure to him his actual invention, provided it is evident that there has been a mistake and he has been guilty of no want of reasonable diligence in discovering it, and no third persons have in the meantime acquired the right to manufacture or sell what he had failed to claim. The object of the patent law is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute, or by the application of artificial rules of interpretation."

The doctrine of that case was applied by this court in the recent case of *Re Briede,* 27 App. D. C. 298, 302, 306. In this case, as in that, no new matter was contained in the specification, and the applicant applied promptly for reissue. The statement of the invention in the original application, followed without change in the reissue application, shows that the process and the apparatus are connected in their design and operation, and are so related as to entitle the applicant to claims for both within the rule declared in *United States ex rel. Steinmetz* v. *Allen, supra.* In the language of that case, the process is "the dominant thing." Consequently, as was said in the case of *Re Briede, supra,* "Had the claim in controversy been submitted while the application for the original patent was pending, we cannot believe that it would have been refused as not being for the same invention as that described and shown. * * * Rather, we think, the office approached its consideration with the idea that it was an unwarranted attempt to obtain a broadened claim by means of a reissue, and with the mistaken idea that such a reissue was not permissible. The construction placed upon the patent statutes by the courts is favorable toward inventors having meritorious inventions, and they do not put upon them harsh or technical interpretations. They do not look with favor upon the refinements of division which lead to many patents being issued for various improvements incorporated

upon a single device. They are inclined to resolve all doubts as to whether more than one invention is embraced in one patent in favor of the patentee."

Whatever of doubt there may be whether the reissue in this case is for the same invention described in the original patent, and under all the circumstances allowable, should, we think, following the ordinary practice of the Patent Office, be resolved in favor of the inventor of a meritorious invention,—especially when it is now too late to file an independent application for a patent for the same. No absolute right of property is conferred by the grant of the patent. The patentee is merely put in position to assert his prima facie right in case of infringement, and have the same adjudicated in a court where extrinsic evidence, if important, may be heard; and not confined, as is this court, to a review of the decisions of the Patent Office upon the record as made up therein. *Re Thomson,* 26 App. D. C. 426; *Seymour* v. *Osborne,* 11 Wall. 516, 544, 20 L. ed. 33, 38; *Parker & W. Co.* v. *Yale Clock Co.* 123 U. S. 87, 98, 31 L. ed. 100, 105, 8 Sup. Ct. Rep. 38.

Our conclusion is that there was error in refusing the reissue application, and the decision must be reversed. It is so ordered, and that this decision be certified to the Commissioner of Patents.                        *Reversed.*