**WINDOW GLASS MACH. CO. et al. v. PITTS-BURGH SHEET GLASS CO.**

(Circuit Court of Appeals, Third Circuit. March 9, 1927.)

No. 3495.

1. **Patents ⬤⟹328—886,618, relating to automatic venting of pulsations in glass apparatus, held infringed.**

Lubbers patent, No. 886,618, relating to the automatic venting of pulsations in glass apparatus, *held* valid and infringed.

2. **Patents ⬤⟹328—1,020,920, relating to automatic venting of pulsations in glass apparatus, held infringed.**

Lubbers patent, No. 1,020,920, relating to the automatic venting of pulsations in glass apparatus, *held* valid and infringed.

3. **Patents ⬤⟹328—886,618, claim 5, for glass-drawing apparatus, held valid and infringed.**

Lubbers patent, No. 886,618, claim 5, relating to glass-drawing apparatus, a drawing tool, an air supply cylinder, and a depending air supply pipe having telescopic connection with air supply cylinder, *held* valid and infringed.

4. **Patents ⬤⟹119—Distinct inventions should not be covered by same patent.**

Distinct and unrelated inventions ought not to be covered by the same patent.

5. **Patents ⬤⟹328—914,588 for apparatus and method for drawing glass held valid and infringed.**

Lubbers patent, No. 914,588, for both an apparatus and a method of drawing glass involving off-center adjustment of the bait and molten glass body, *held* valid and infringed.

6. **Patents ⬤⟹328—922,973, claims 1, 2, 3, for glass-drawing machine, held not to disclose invention.**

Lubbers patent, No. 922,973, claims 1, 2, 3, for glass-drawing machine embodying a two-part top stone *held* not to disclose invention.

7. **Patents ⬤⟹328—988,454, claim 8, for double glass pot with means of moving it longitudinally, held not infringed.**

Frink's patent, No. 988,454, claim 8, for double glass pot, and means for moving the pot longitudinally, for glass apparatus, *held* not infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Frederic P. Schoonmaker, Judge.

Patent infringement suit by the Window Glass Machine Company and another against the Pittsburgh Sheet Glass Company. From decree granting plaintiffs part only of relief sought, they appeal. Remanded, with instructions.

The Frink's patent, No. 988,454, claim 8, referred to in the opinion, involved an improvement in a glass apparatus consisting of "a double glass pot having trunnions, bearings for the said trunnions, and the means for moving the pot longitudinally on its axis to center with its bearings substantially as described."

Byrnes, Stebbins & Parmelee, of Pittsburgh, Pa. (Walter J. Blenko, Clarence P. Byrnes, and George E. Stebbins, all of Pittsburgh, Pa., of counsel), for appellants.

Frank B. Ingersoll, Leon E. Hickman, and Gordon, Smith, Buchanan & Scott, all of Pittsburgh, Pa., and William S. Hodges, of Washington, D. C., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. [1,2] This case concerns certain claims of three glass apparatus patents granted to Lubbers, Nos. 886,618, 914,588, and 1,020,920, all of which claims, with the exception of claim No. 5 of the first, were before this court in litigation herein referred to. Nos. 886,618 and 1,-020,920 relate to the automatic venting of pulsations which have their pulse origin within the cylinder. No. 914,588 concerns the off-center adjustment of the bait and molten glass body from which glass cylinders are drawn. We premise this opinion by saying that it concerns, and is addressed only to, those familiar with the intricate art of machine making window glass, and, confining ourselves accordingly to the bare statements herein made, it may not be intelligible to others. We are here concerned initially with the Lubbers patents which relate to automatic venting, a phenomena described on pages 374 and 375 of 261 F. hereafter referred to as the consolidated case.

The patent device which was held by this court in the last-mentioned case is not described in the upper court's opinion, which opinion we may say was confined to the question of the patent's validity, but it was particularly described by the lower court, and the reasons for its holding the infringement were by such lower court stated as follows: "It is clearly established that at the time of the filing of the bill of complaint the defendants used a special vent hole in the pipe leading from the fan to the blowpipe on the cage. That the air did escape through this vent hole during the drawing operation in the same way, and for the same purpose, as plaintiff's vent, is entirely clear. They thereby infringed the claims 20 to 25, both inclusive, of apparatus patent No. 886,618, claims 3, 6, 7, and 8 of its companion method patent No. 1,-020,920. It is defendants' position that since the bills were filed they have plugged up the

vent holes, and successfully operate without them. What the defendants have done since the commencement of the suit is, strictly speaking, not an issue here. But in defendants' operation the supply of air to the cylinder is regulated by the speed of the fan. And the testimony clearly establishes that, when they plugged the open vents, they cut down the fan blades, and removed the side rings or plates from the blades. This increased the clearance space between the blades and the casing in which they rotate, which caused an effective and continuous vent back through the fan itself. At the same speed, the fan so cut down gives less pressure in the supply pipe than before. Had defendants desired merely to reduce the pressure, this could have been done easily and cheaply, as the evidence shows, by simply throttling the air inlet to the fan. They chose rather to cut down the fan blades and remove the rings. Air is thus drawn in through the central part of the eye of the casing, while at the same time air passes out around the outer part of the eye. This outflow increases as the back pressure from the cylinder to the fan is increased by the pulsations in the cylinder, and thus an effective vent for back pressure is secured."

From this it appears that the defendants in that case, evidently relying on the invalidity of Lubbers' vent claims, used Lubbers' identical vent, but, on the bill being filed, plugged the vent, and thereafter cut down the fan blades from the size used in a standard fan, and thereby, as said by the court, "air is thus drawn in through the central part of the eye of the casing, while at the same time air passes out around the outer part of the eye. This outflow increases as the back pressure from the cylinder to the fan is increased by the pulsations in the cylinder, and thus an effective vent or back pressure is secured." The standard blower with its cut-down, fan automatically venting was accordingly held in that case, which was one of an open air system, an infringement of Lubbers' hole vent. The same patent again came before this court in Window v. Pittsburgh, 284 F. 645, hereafter called the Pittsburgh Case, where the alleged infringement is thus described by this court and differentiated from Lubbers': "The fans used were standard type, bought in the open market and operated like any fan feeding air through a pipe above atmospheric pressure. The fan fed the air to the cylinder according to the condition of air pressure in the cylinder. When the pressure in the cylinder increased, less air was taken in by the fan; when it decreased, the fan supplied more air; the result of the operation being to keep

the pressure relatively constant. To this was supplemented the watchfulness and valve manipulation of the blower. The open vent of the patents is something wholly different. It is in the nature of a self-acting safety valve. It does not control the inflow of air except as it controls the outflow. It requires no human assistance. But in the defendants' operation the fan delivered air according to the varying conditions of the air pressure in the cylinder and thereby regulated the air pressure of the cylinder in a way different from that of the invention of the patents. That the defendants' apparatus and method were inferior to those of the patents is of no concern."

In the case now before us the trial judge was of opinion the defendants' structure, which is alleged to infringe Lubbers' vent, was of the same type as that in the Pittsburgh Case, saying: "As we view the system of the defendant in this case, in principle it is the same sort of system that the Circuit Court held did not infringe on plaintiff's vent patent in the case of Window Glass Machine Company v. Pittsburgh Plate Glass Co., supra." On the other hand, the plaintiff claimed defendants' structure was substantially identical with the structure in the consolidated case. Without entering into a discussion of minor questions, it suffices to say that this question of fact underlies, and is decisive of the present case. What, then, are the facts as shown by the proofs in the present case?

We are of opinion, first, that the defendants here did not use a blower of the standard type; namely, one where the fan blade filled the shell. In that respect, the situation is wholly different from the Pittsburgh Case, where the usual standard blower was used, and where the fan blades were not cut down, but filled the shell. Second, we are further of opinion that the defendants in the present case initially ordered a cut-down fan blade placed in the shell of a standard blower. In that respect the situation is the same as in the consolidated case, save that in the latter the fan blade was cut down by the user instead of as here by the manufacturer before use. That some particular functional purpose was meant by the defendants to be effected by this cut-down fan is evidenced by the proofs. Such a fan was so out of the usual run that the manager of the Sturdevant Company, from which it was ordered, testified, "I don't recall in my 25 years' experience ever furnishing any different size than the standard wheel until this particular time. * * * Of course every time we make a different size wheel it is done for some particular purpose." The proofs also show that these 9-inch unusual

blades were not cut down to normal size, but were specially made under defendants' order, and that the difference of even a half an inch was material. In that respect, defendants' manager, writing the Sturdevant Company, says: "The small wheel gives us the best results. This wheel is 9½ inches in diameter, and if it were 9 inches in diameter it would suit our purpose better." What was this purpose? Plaintiff's witness proves he put his hand to the eye of defendants' blowers and felt the air coming out of them. The defendants' expert says he also could feel the air coming out. It was this outflow to which Judge Thompson in the lower court's opinion referred in the consolidated case, saying: "This outflow increases as the back pressure from the cylinder to the fan is increased by the pulsations in the cylinder and thus an effective vent for back pressure is secured." Supporting this view we have the testimony that, contrasted with a long-fanned blade and a standard blower, the small or cut-down fan gives an additional space of 3¾ inches for blowing back. We are also impressed by the testimony of Dr. Bishop, whose qualifications have been approvingly referred to by this court in the consolidated case, and who in testifying in the present case says that "in the defendants' system the pressure is automatically regulated by the vent at the eye of the rotator and the casing." In view of these proofs, which in our judgment clearly show a deliberate purpose to infringe, we do not deem it necessary to discuss other factors which strengthen this view, namely, that the defendants' system is not the closed-hand controlled system of the Pittsburgh Case which pumped into a reservoir, and from the outside made up for a deficiency of pressure in the cylinder which threatened collapse, but that it is in its working akin to the Lubbers vent, in that it is an open system automatically vented and intended not to overcome deficiency of pressure by pumping in as was done in the Pittsburgh Case, but to relieve pulsations internally arising, and to relieve such pulsations by an automatic venting of them outwardly through the eye of the blower, as was the fact in the consolidated case. In that connection we note that the air troubles in these glass cylinders are of two kinds: First, those caused by an under or over supply of air from without, which result either in an over distention or a cave-in of the cylinder. These troubles arise from pressure. Second, where pulsations, or puffs, which spontaneously and instantaneously originate within the cylinder, which puffs cause corrugations

or ribs to form in the cylinder and ruin the glass. The former, that is, pressure troubles, are slower, and can be prevented by manual pressure control, and arise by reason of lack of proper manual control in blowing air into the chamber. The latter, puffs, are unpreventable, are instantaneous, and, unless automatically vented, ruin the cylinder, and are not caused by improper manual handling in pumping air into the chimney, but originate in the air already in the cylinder. We accordingly hold the defendants infringed Lubbers' vent. We here note that we have not overlooked or failed to consider the contention that there is an alleged air cushion which absorbs and neutralizes the pulsations. But we decline so to hold, and regard, as we have said, the type of blower here used with its cut-down fan as the crucial factor bearing on the question of infringement.

[3, 4] We next turn to claim 5 of Lubbers' patent, No. 886,618, which reads: "In glass drawing apparatus, a drawing tool, an air supply cylinder, and a depending air supply pipe having telescopic connection with the air supply cylinder; substantially as described." These elements, in substantial function and equivalency, are used by defendants, and infringement of the claim must be decreed, unless it is invalid. That it was invalid the court below held on the well-settled principle of the patent law, as stated in its opinion, that "distinct and unrelated inventions ought not to be covered by the same patent." We have no question of the soundness of the principle, but are of opinion the court fell into error in holding the claim here in question was for a distinct and unrelated invention, and therefore not to be covered by the same patent. Now this patent was not for one or more separate inventions, but, as it states, is for "an apparatus for drawing hollow glass articles." The specifications describe, and the three drawings illustrate, but a single apparatus. It is for this single apparatus structure embodying several parts, but all co-operating to perform a single unitary operation, to wit, drawing and blowing a single article from a glass cylinder. In this unitary apparatus and operation, the vent hole, which specially has proved of major importance, and the telescopic connection, of lesser, but still co-operating, importance, have each functional parts, so that the patent is not for two inventions, but for a unitary apparatus which involves a number of co-acting elements, among which is a vent, a telescopic connection, etc. While in one sense these elements have a distinct inventive character of their own, yet their practical use and their benefit

to the public lies in their conjoint use in the single apparatus, which is the subject of this patent, and in and as a part of such apparatus they are properly embodied in claims where, as here, we have not a claim for a telescopic connection, but "in glass-drawing apparatus," as set forth in claim 5 above quoted. We accordingly hold such claim valid and infringed.

[5] It remains to consider Lubbers' off-center patent, No. 914,588, which was for both an apparatus and a method of drawing glass, which in the art has come to be known as the tension or off-center process. The nature of this process and its pioneer and high character are referred to at length on pages 379, 380, 381, of the consolidated case. Referring to the bait dropped in the molten glass, we there said: "The natural thing, of course, was to let the bait drop into the center of the pot and draw the glass from that point, but for some inexplicable reason it was found in practice that the cylinder as it was drawn began to shift from this central position in an unaccountable way, with the result of producing glass of uneven thickness on opposite sides of the cylinder. * * * To overcome these difficulties, Lubbers devised a simple drawing apparatus, by which the bait was made adjustable in lateral directions. When it was found that the bait and the cylinder were being drawn to one side by surface tension, he started the next draw a corresponding distance away from the center, so that the effect of the surface tension was to center the draw in the center of the pot and thus make a cylinder of uniform thickness." In addition to four claims for the particular apparatus by which he disclosed how his process could be used, Lubbers was granted process claims, as an example of which claim 5 is as follows: "The method of drawing glass of substantially uniform thickness, consisting in adjusting the point of draw relative to the wall of the pot to compensate for varying conditions in the glass of the bath; substantially as described." Has the defendant used this process in its plant? It seems to use that the proof of a customary practice thereof by the workmen clearly shows that, whenever there was reason to anticipate thick and thin drawings, they used the process of Lubbers to save the cylinder from being spoiled. Sometimes it was done by the use of a hook which the ball and socket joint allowed the bait to respond to. Sometimes it was done by the adjustment of the pot. Whatever the nature of the defendants' apparatus was in detail, one thing is clear—that it was such that the workmen could use it, and in point of fact did so use

it as to avail themselves of a process which Lubbers had disclosed, and to which the Patent Office granted claims.

[6, 7] As to patent No. 922,973, granted May 25, 1909, for a glass-drawing machine, of which claims 1, 2, and 3 embody a two-part top stone, we are of opinion the decree below did not involve error, for in our judgment in the state of the glass art the use of a double stone and its removal so as to allow reversal of the pot did not involve invention. Nor do we find any error in the lower court's reasoning or conclusion that defendant did not infringe claim 8 of Frink's patent No. 988,454.

The cause will therefore be remanded to the court below, with instructions to enter a decree in accordance with this opinion.