## MOSLANK v. KULAGE et al.
### No. 9202.

Circuit Court of Appeals, Eighth Circuit.
Feb. 2, 1932.

Howard G. Cook, of St. Louis, Mo., for appellant.

Bruce S. Elliott, of St. Louis, Mo., for appellees.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

September 11, 1922, one Albert Weingaertner filed application in the Patent Office of the United States for a patent upon a weather strip for windows. The specification recited that:

"This invention relates to improvements in weather-strips and particularly to weather-strips intended for use on a window having a pair of vertically movable window sashes provided with horizontal meeting rails, said weather-strip being intended to provide a means whereby a weather-tight joint may be obtained between said meeting rails when said window sashes are in their closed positions.

"A further object is to provide a weather-strip by the use of which a weather-tight joint may be obtained between the ends of the meeting rails of the associated window sashes and the parting strips of the window frame."

A perspective view of the proposed weather strip is shown in figure IV of the drawings:

The patent issued January 12, 1926, under the serial No. 1,569,413. Claim No. 4 of this patent—the only one relied upon in this litigation—reads thus:

"A weather-strip for windows having a pair of window sashes provided with meeting rails, comprising bowed strips adapted to be secured to the frame of the window, a body of resilient material interposed between each of said bowed strips and said window frame, and clamping means on said bowed strips for securing said resilient material to said bowed strips, said bowed strips being adapted to contact with said meeting rails."

August 3, 1925, one Dominick Kulage filed application for patent upon a weather strip unit. The specification thus describes the nature and object of the proposed invention:

"As is well known, in ordinary window construction, the meeting rails of the frames of the upper and lower windows are recessed in their outer edge portions to receive the parting strips located between the two frames, so that the opposed faces of the meeting rails may be in contact beyond the outer face of the parting strips. This construction results in leaving a considerable space between the bottoms of these recesses and the faces of the parting strips through which cold air may enter.

"Heretofore, attempts have been made to close these spaces by securing to the face of the parting strip, as by glue, tacks, or the like, a short strip of felt of substantially the width of the parting strip and of a length corresponding to the height of the meeting rails. The objection to such procedure is that in severely cold weather, the felt piece will frequently freeze to the window frame and be torn from the parting strip when the window is raised. The same result frequently follows after a rain, when the felt will be caused to adhere to the frame and be torn away in lifting the window.

"According to my invention, I employ a suitable strip of filling material, such as felt, and secure the same on the inner face of a strip of metal of substantially the width, but slightly longer than, the piece of felt, and having its ends bent inward and apertured so that the device may be readily secured by tacks to the outer face of the parting strip. In this application, the felt is placed next to the parting strip, leaving the metal to form the contact with the bottoms of the recesses in the meeting rails, thus presenting a smooth surface for the rails to slide over, and preventing the felt strip from coming in contact with said rails. This, of course, avoids any possibility of the felt filling strip adhering

or being frozen to the meeting rails, or, in fact, of coming in contact therewith at all."

Figure 3 of the drawings is a perspective of the proposed weather strip unit:

This application ripened into patent October 18, 1927, under the serial No. 1,646,155. This patent contains ten claims, of which claims 1, and 6 to 10, are involved in this litigation, as will hereafter appear. Of these claims 1 and 10 may be taken as typical, and read as follows:

"1. A weather-strip unit comprising a strip of metal having a shorter strip of felt, or the like, secured thereon, said metal strip having its ends bent inward and apertured."

"10. A filler weather-strip applied between the parting bead of a window and the bottom and sides of a notch cut in the meeting rails of a window sash and comprising a front member and a body member of compressible material secured thereto, said body member being of greater width than said parting bead and having a part thereof projecting outwardly at each side of said parting bead, said weather-strip being positioned and arranged so that said front member will contact with the bottom of said notch and the projecting parts of said body member will contact with the sides of said notch."

January 28, 1930, appellant, assignee of patent No. 1,569,413, brought suit against Kulage and Peerless Weatherstrip & Caulking Company of St. Louis, a Missouri corporation, appellees herein, charging infringement of claim 4 of that patent. By their answer appellees denied infringement, and alleged invalidity of patent No. 1,569,413, in that said letters patent describe and claim two distinct and unrelated inventions in contravention of the Statutes of the United States, particularly sections 4884 and 4886, R. S. U. S. (35 USCA §§ 40, 31). By way of

counterclaim, appellee Kulage, as the inventor and owner of letters patent No. 1,646,-155, charged appellant with infringement of said patent, claims 1, and 6 to 10 being relied upon. Appellant in his reply denied infringement and alleged that patent No. 1,-646,155 is void because anticipated in the prior art. Upon the issues thus framed the trial court decreed that the Weingaertner patent, No. 1,569,413, is valid but not infringed by the device of appellees; that the Kulage patent, No. 1,646,155, is good and valid in law, and that claims 1, 6, 7, 8, 9 and 10 thereof are infringed by the commercial device of appellant. An accounting was decreed in favor of Kulage, to be deferred, however, until, and dependent upon, the decision of this court on appeal.

Let us first dispose of the contention that the Weingaertner patent is invalid because it describes and claims "two distinct and unrelated inventions." It is alleged that one of said inventions is specifically claimed in claims 1 and 2, and the other in claims 3, 4, and 5 of said patent. Claims 1 and 2 have to do with a metal weather strip between the horizontal meeting rails of the two sashes of a window when closed. Claims 3, 4, and 5 disclose a structure designed to obtain a weather-tight joint "between the ends of the meeting rails of the window sashes and the parting strip of the window frame."

For the purposes of this discussion, the following quotation from the specification is deemed sufficient to describe the device covered by claims 1 and 2:

"The joint between the meeting rails of associated window sashes is not usually weather-tight and one of the purposes of the present invention is to provide a means whereby this joint is rendered weather-tight.

"As stated above the meeting rails are adapted to contact with each other when the window sashes are in their closed positions and to provide a space for the reception of my improved weather-strip I provide one of said meeting rails with a recess 1 which extends longitudinally of said meeting rail from end to end thereof. My improved weather-strip 2 is located within the recess 1 and extends the full length of the meeting rails H, said weatherstrip being preferably formed from a single piece of resilient material."

Omitting lettering and numbers, the specification thus describes the device covered by claims 3, 4, and 5:

"To provide weather-tight joints between the outer ends of the meeting rails and the parting strips I employ weather-strips com-

prising bowed strips of resilient material which are fastened to said parting strips and extend into recesses formed in the opposite end faces of the meeting rails. Interposed between each of the bowed strips and the parting strips is a body of resilient material, such as felt, said material being designated by the reference character 13. The bowed strip is provided with a pair of integral tongues which are adapted to secure said body of material to said bowed strip. The integral tongues are formed by slitting the strip and bending a portion of the material of said strip outwardly."

It will thus be seen that the weather strip first above described is situated between the sashes of a window, and the second is placed at the sides, into recesses formed in the end faces of the meeting sash rails. By this means, "when the window sashes are in their closed positions, the ends of the meeting rails of said sashes will contact with the bowed strips and will produce a weather-tight joint between said meeting rails and the parting strips of the window frame." The first operates between the sashes, and the second at the sides, where the ends of the sash rails meet the parting strips of the window frame. As will be observed, they differ somewhat in form, structure, and material employed. Concerning this situation, claimed by appellees to involve two distinct and unrelated inventions, the trial court said: "It will thus be seen that two separate devices are shown by the drawings described in the specifications and set out in the claims. Claims 1 and 2 are in no way applicable to the weather-strip unit designed to be used between the ends of the meeting rails and the parting strip of the window frame; claims 3, 4 and 5 are in no way applicable to the metal weather-strip designed to be used between the horizontal meeting rails of the sash. None of the claims cover both of the two structures."

However, the learned District Judge, in resolving this point, invokes the rules laid down in early patent litigation and consistently adhered to by the Supreme Court in later decisions, that "before a patent can be said to be duplicitous the inventions must be 'wholly independent of each other, and distinct inventions for unconnected objects,'" and that "a patent for more than one invention is not void if they are connected in their design or operation"—citing Wyeth v. Stone, Fed. Cas. No. 18,107, 1 Story, 288; Hogg v. Emerson, 11 How. 587, 13 L. Ed. 824; and United States v. Allen, 192 U. S. 543, 24 S. Ct. 416, 48 L. Ed. 555. He finds that the two

devices are designed to operate together for the common purpose of making weather tight the joints between two sashes of a window when closed; that there is a co-operation of the two structures to accomplish a common result, and therefore that patent No. 1,569,-413, is not void as covering two separate and distinct inventions. Wilkins Shoe-Button Fastener Co. v. Webb (C. C.) 89 F. 982, 983; Window Glass Machine Co. v. Pittsburgh Sheet Glass Co. (C. C. A. 3) 18 F.(2d) 63. We fully concur in this conclusion.

We take up next the question of whether appellees' device infringes claim 4 of the Weingaertner patent, which covers the device which operates at the sides where the ends of the sash rails meet the parting strips of the window frame. The figures from the two patents produced hereinabove disclose structural differences. Claim 4 of patent No. 1,569,413 enumerates the following elements: (1) Bowed strips adapted to be secured to the frame of the window; (2) a body of resilient material interposed between each of said bowed strips and said window frame; and (3) clamping means on said bowed strips for securing said resilient material to said bowed strips which are adapted to contact with said meeting rails. Appellees' device does not have a bowed metal strip, with clamping means for attaching the compressible material to it. In this device that material is held to the metal strip by a staple, which forms no part of the metal strip itself as in the Weingaertner structure. The two devices are, however, very similar in construction and purpose. The Weingaertner application was first in time of filing, and his patent preceded the Kulage issue by approximately a year and nine months. We must first determine, then, the breadth of equivalents to which he is entitled.

The first question to be answered is whether patent No. 1,569,413 is a pioneer? It is in evidence that, prior to appellant's invention, there were devices of this general nature used for closing the recesses at the meeting rails and parting beads of windows. There were a number of such devices. At first, wooden blocks were used; afterwards, felt and pieces of metal. The felt was attached by tacking, and then both ends of the sheet metal were tacked. In some cases the felt, or other spongy or compressible matter, would be made to adhere to the metal strip by means of glue, or other sticky substances. Also, a wooden filler, such as a maple plug, had been used for the same purpose, and at the same points in the window structure. None of

these methods had been found satisfactory at all times and under all weather conditions. It seems, therefore, that this field of invention had previously been occupied, with an objective similar to that of both Weingaertner and Kulage. The former, in his specification, describes his invention as an improvement in weather strips of this particular kind, and Kulage refers to previous attempts to accomplish the same result, substantially in the manner above described. In this situation we turn for guidance to the rules announced in the text-books and established in the decisions of the Supreme Court.

In Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 407, 25 S. Ct. 697, 700, 49 L. Ed. 1100, it is said: "To what liberality of construction these claims are entitled depends to a certain extent upon the character of the invention, and whether it is what is termed in ordinary parlance a 'pioneer.' This word, although used somewhat loosely, is commonly understood to denote a patent covering a function never before performed, a wholly novel device, or one of such novelty and importance as to mark a distinct step in the progress of the art, as distinguished from a mere improvement or perfection of what had gone before."

Furthermore, the nature of an improvement is thus described, Rob. Pat., paragraph 210: "An improvement is an addition to or alteration in some existing means, which increases its efficiency without destroying its identity. It includes two necessary ideas: the idea of a complete and practical operative art or instrument and the idea of some change in such art or instrument not affecting its essential character but enabling it to produce its appropriate results in a more perfect or economical manner."

It seems, then, that, despite its precedence over the Kulage patent, in date of application and issue, the Weingaertner patent is not a pioneer, and therefore is not entitled to a correspondingly broad range of equivalents in view of the prior art. Anakin Lock Works v. Dillon Lock Works (C. C. A. 8) 292 F. 45. It is, however, entitled to a fair construction and scope (Paper Bag Patent Cases, 210 U. S. 405, 414, 28 S. Ct. 748, 52 L. Ed. 1122), and we think that, absent the history of these patents in the Patent Office, appellant would be entitled to a range of equivalents sufficient to embrace the Kulage structure. But, from the record, we must consider the situation in the Patent Office, and the presumptions arising therefrom. Both applications were pending in that office at the same time, for a period, before either was issued. February 18, 1926, the Patent Office wrote to attorney for Kulage, suggesting that his client adopt two of Weingaertner's proposed claims, including No. 4, for purposes of interference. March 12, 1926, the suggestion was declined. March 24, 1926, the Patent Office again wrote counsel for Kulage, citing the Weingaertner application as an "additional reference," and said:

"In view of the applicant's disclaimer of the invention as covered by the claims suggested from the patent to Weingaertner, said patent now becomes a valid reference as showing the state of the art as considered in connection with this application.

"All claims are rejected on the patent to Weingaertner as the full equivalent of the applicant's disclosure."

July 19, 1926, attorney for Kulage canceled certain proposed claims, and wrote the Patent Office as follows:

"Consideration of the claims remaining in the case is requested. Present claim 1 calls for a metal strip having its ends bent inward and apertured. In Weingaertner, the strip is straight. It is possibly bent inward after application to the window, but this would be at the expense of compression and is, at best, the result of a subsequent operation. Claim 2 calls for the metal strip to have its edge portion bent downwardly to strengthen the structure. This is not shown in Weingaertner at all. Claim 3 calls for a staple passed through the strip of metal and the strip of felt to secure them together. This is not the construction of Weingaertner who must punch out his metal strip in order to provide the tongues 14 for bending over the opposite ends of the felt strip. Claim 4 defines the staple as being disposed longitudinally of the unit. As stated, there is no staple in Weingaertner. Claim 5 also refers to the staple, and adds to what is provided by the other claims, the fact that the legs of the staple are clinched against the strip of felt.

"The above defined differences may be considered slight, but they are to be viewed in the light of the subject matter of the invention which itself, is of a very simple character. It is submitted, however, that they are substantial differences and are sufficient to patentably distinguish from Weingaertner. It is hoped, therefore, on reconsideration, that the above claims will be allowed."

Thereupon, ultimately, without further procedure, so far as the record discloses, the Kulage patent was allowed. Inasmuch

as there are distinct differences in claimed construction between the two patented devices, and inasmuch, further, as this precise matter was before the Patent Office while both patents were pending, a strong presumption exists in favor of the Kulage issue—succeeding, as it did, that to Weingaertner. This presumption is strengthened by the fact that appellant has practically ceased to manufacture strictly in accordance with the claims of patent No. 1,569,413. On the contrary, his commercial device corresponds in terms to the reading of the Kulage claims. The presumption arising from the action of the Patent Office is that both patents are restricted substantially to the precise mechanical structures disclosed. This is, in effect, the finding of the trial court. By its decree both patents are declared valid. The Kulage device does not infringe the claim of Weingaertner. Appellant is free to manufacture as defined in that claim. But, inasmuch as he has appropriated appellees' structure in his commercial device, the infringement found by the trial court is apparent. It follows that the decree must be affirmed, and it is so ordered.