24 C.C.P.A. (Patents)

## In re SEEBACH.

### Patent Appeals No. 3781.

Court of Customs and Patent Appeals.
March 29, 1937.

Jos. N. Nielsen, of New York City (Charles H. Potter and Harold T. Stowell, both of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner rejecting claims 17 to 22, inclusive, of appellant's application for patent as not patentably distinct from certain counts of an interference, which are claims of another application of appellant, of which the application before us is a division. No claims were allowed.

Claims 17 and 22 are illustrative of the claims before us and read as follows:

"17. Method of preparing molded objects from a phenol-aldehyde resin of the heat-hardenable type and an air-drying fatty oil as a binder which comprises forming a homogeneous composition of the heat-hardenable resin with the oil in an oxidized condition, mixing a filler with the composition, and molding the product with the application of heat to cause hardening of the binder.

"22. As a new article of manufacture a molded body having as a binder a product comprising a phenol-aldehyde resin of the heat hardening type in homogeneous composition with an air-drying oil having an oxidized component."

The references cited, in conjunction with the above-mentioned interference, No. 68,601, are as follows: Ellis, 1,541,336,

June 9, 1925; Coleman et al., 1,808,529, June 2, 1931; Brown, 1,212,738, January 16, 1917.

The application relates to the production of molded articles and the subject-matter is sufficiently described in the above-quoted claims.

The counts of said interference relied upon read as follows:

"1. Process of preparing compositions which comprises mixing a hardenable phenol-aldehyde condensation product with an oxidized air-drying fatty oil in a solvent for both components and thereafter removing the solvent.

"2. As a composition of matter suitable for coatings a product comprising a hardenable phenol-aldehyde condensation product and an oxidized air-drying fatty oil incorporated therewith."

The reference patents are described in the decision of the Board as follows:

"* * * Broadly, Ellis discloses a composition of resin, phthalic anhydride and glycerol dissolved in a solvent and mixed with a small amount of drying oil and filler may be molded. This relates to a different type of resin and apparently only a small amount of the drying oil in the raw state.

"Coleman coats particles of filler with a coating of drying or semi-drying oils or bituminous material whereupon the film becomes dried. This coated filler is mixed with a phenolic condensation product moistened with a solvent in order to prepare a molding powder.

"Brown claims to produce a mixture of phenolic resins and drying oil by mixing the oil with the constituents for producing a phenolic condensation product and allowing the complete reaction to proceed."

With respect to said patent references and the reference counts involved, which latter are claims in appellant's parent application, the Board stated:

"The citations do not appear to anticipate the claims on appeal considering applicant's specific disclosure and reasons therefor, but the examiner holds that these citations referring broadly to making molding compositions out of somewhat similar materials taken with the claims which have been held allowable in the parent application of which this case is a division, constitute a reference against the allowance of such claims in this case.

"The claims referred to in the parent case relate to producing a mixture of phenolic resin and drying oils by the particular method of employing previously oxidized oil and resin in a common solvent and the product, but the claims in the parent case do not relate to such material as a binder in making molding compositions but rather relate to making such combination for use in the lacquer and varnish arts. * * *"

The Board expressed the view that, inasmuch as the interference counts embraced the same resinous materials as are embraced in the claims before us, and as the patent references disclose that binders of the same general type as those disclosed in said claims may be used for molding purposes, the claims are not patentable over said counts of the interference in view of the patent references.

We think the Board came to the right conclusion, although as we view it, its holding is tantamount to a decision that the requirement for division of the parent application was improper. This we shall later discuss herein.

It is clear that for the claims in the divisional application before us to be patentable therein, they must be patentably distinct from the claims of the parent application which are now in interference. Appellant concedes this, and contends that they are so patentably distinct.

We think the only novelty in the claims before us lies in the resin, claims for which have been allowed in the parent application and are now in interference. While it is true that the parent application relates to a composition for use in the lacquer and varnish arts, the claims in that application are not so limited, and it seems to us that any purchaser of the composition after it is patented will have the right to make any use of it that would be obvious in view of the prior art. We are of the opinion that the process of molding the material is obvious from the patent references Ellis and Coleman, where compositions of the same general character, but patentably distinct from appellant's composition, are used for molding purposes by mixing the same with a filler, and the Coleman patent discloses molding his product with the application of heat to cause hardening of the binder, which steps comprise the last elements of the claims here involved. Appellant does not claim that the mere steps of mixing a filler with a resinous composition and

molding the product with the application of heat to cause hardening of the binder are in themselves inventive, but his claimed invention lies in mixing his particular composition with the filler, followed by conventional steps disclosed by the prior art.

The case of In re Dreyfus, 65 F.(2d) 472, 473, 20 C.C.P.A.(Patents) 1204, involved certain process claims for the production of certain filaments or threads, such as artificial silk, by what was called the dry spinning of a solution of certain specified substances. In our opinion affirming the decision of the Board of Appeals, we said:

"Upon the whole, we think the fair and proper construction of the Board's decision is that the claims are rejected in the light of the prior art cited, because processes of dry spinning are already patented to appellant and others and were known to the art, and he has added no new feature to the process of dry spinning itself by adding an additional ingredient to, or making changes of ingredients in, the solution which he spins."

In the case of In re Byck, 48 F.(2d) 665, 666, 18 C.C.P.A.(Patents) 1208, there was involved the patentability of a certain article having a coating of a certain composition, which composition had been patented to appellant in another patent. In our opinion we said:

"We think it clear that the application here in issue does not claim a separate invention from that claimed in the issued patent, but only claims an obvious use of the composition there patented. If appellant's position is well taken, then it would seem that any inventor of a new and useful composition of matter may receive a patent for it, and he may also, by filing separate applications, secure patents for every use of such composition that he may disclose. An inventor is not entitled to a patent unless his invention is new and useful."

For the reasons hereinbefore stated, we think the involved claims embrace only the same invention as is embraced in the claims of appellant's parent application, hereinbefore quoted, and now in interference.

When the Examiner rejected appellant's claims, he stated in a letter appearing in the record as follows:

"This rejection may possibly be overcome if applicant prevails in the interferences in which the parent application is involved. If applicant wishes, prosecution of this application may be suspended upon request pending the outcome of the interferences. The request, however, should include a full response to this rejection."

Appellant elected, however, not to accept the suggestion of the Examiner, and proceeded with the prosecution of the claims.

The Board of Appeals, however, did not concur in the view of the Examiner, stating:

"* * * It is not regarded as being material whether applicant is finally the successful or the unsuccessful party in the interference proceedings. In either case the situation as to patentability over the issue would be regarded as the same. * * *"

We agree with the view of the Board upon this point, for in order to entitle appellant to allowance of the claims in his divisional application, it must appear that they embrace a different invention from that embraced in the claims of the parent application; or, in other words, they must be patentably distinct therefrom.

That the requirement for division was improper would seem to be established from the fact that the Patent Office tribunals properly held that the claims here involved are for the same invention claimed in the parent application. However, appellant did not appeal from the Examiner's requirement of division, which he might have done, and therefore any error of the Examiner in that regard cannot be corrected in this appeal. If appellant should be awarded priority in the interference now pending, it may be that, before a patent is issued to appellant, the proper Patent Office tribunal has the discretion to take cognizance of this error and permit appellant further to prosecute the involved claims under his parent application. This, however, is not a matter before us in this appeal and we express no opinion with respect thereto.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate in this decision.