40 C.C.P.A. (Patents)

### Application of EISLER.
### Patent Appeals No. 5966.

United States Court of Customs and Patent Appeals.
April 15, 1953.

Frederick E. Hane, New York City (Abraham J. Nydick, New York City, A. M. Holcombe and Joseph F. Brisebois, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting (a) claims 1, 4, 6, 7 and 8 of appellant's application for a patent on an invention relating to the manufacture of electrical apparatus, particularly to the production of electric and magnetic circuits and parts thereof, known as the printed circuit art, and rejecting (b) claims 2, 3, 5, 9 and 10 as not readable upon the elected species.

Claim 1 is illustrative:

"1. A method of producing the conductive metal portions of three-dimensional electric and magnetic circuit components in which the metal portions do not lie in one plane in the finished component and cannot without severance of the conductive circuit be developed into one plane, which consists in printing a dissection of the circuit, preparing from the print a flexible metal pattern of the circuit upon a flexible insulating support, and folding said support and pattern to bring into register predetermined zones of the pattern adapted to be conductively joined in circuit and to give the pattern the desired three-dimensional form."

The following stipulation of record is deemed necessary to a proper understanding and disposition of the issues presented:

"It is hereby stipulated and agreed by and between counsel for appellant and the Solicitor of the Patent Office * * * that the specification and drawings of appellant's application Serial No. 11,796 may be omitted, being identical with the specification and drawings of appellant's Patent No. 2,441,960, to be included in said record, with the following addition on the last page * * * at the end of the description * * * namely:—This application is a division of my original application Serial No. 520,991, filed February 3, 1944, now patent No. 2,-441,960, dated May 25, 1948, entitled 'Manufacture of Electric Circuit Components'.

"It is further stipulated and agreed that in response to the Examiner's requirement for an election of species between species (a) and (b) as set forth in his action of February 8, 1950, applicant (appellant) elected species (a) and requested that action on species (b) be suspended pending allowance of a generic claim."

Claims in group (a) define a species of electric circuit in which the printed circuit is folded over to be joined at selected points or areas to complete a circuit involving crossing electric conductors. The involved subject matter was described by the board more particularly in the following excerpt from its decision, reference to specific figures of the drawing being omitted here as indicated by asterisks:

"The application discloses a method for making an assembly of electric circuits or for making parts of electric

apparatus such as induction coils for example. The conductive circuits are formed on the surface of a sheet like insulation member by a process involving printing. In the electric circuits illustrated in * * * the drawing, for example, certain of the conductors cross and obviously cannot be located on the same surface of the insulation sheet and be maintained out of contact with each other as they must be. The circuits are divided by the engineer into two portions which are illustrated * * * respectively and none of the conductive elements of a circuit in each of the portions crosses any of the other elements in that portion. The circuits are metallic and are applied to a sheet of insulation. These sheets are assembled back to back with the conductive parts on the two outer sides of the assembly. Some of the circuits are then partly on one surface of the assembly and partly on the other surface and to complete them the associated ends of the interrupted parts are connected by conductive elements, such as rivets or wires, which are punched through the assembly making up the insulating backing or support. The supports may be rigid or flexible and in the modification to which claims 1, 4, 6, 7 and 8 are directed, the assembly of the portions is performed by folding the single sheets upon which the two circuit portions are located. The conductive circuits are applied to the insulating sheets by a printing process. In one way of applying the circuits, sheets are first covered with a thin layer of conductive material upon which the circuit parts are printed in acid resistant ink. The sheets are then subjected to acid in an etching process by which the imprinted parts of the metal are removed by the acid. The application discloses several modifications * * * in which inductance coils or the windings of dynamo electric machines may be formed by a similar process. The modification illustrated * * * involves the application of printed circuits or electrodes upon glass which may be formed into the elements of electronic tubes."

No generic claim was found allowable. Claims 1, 4, 6, 7 and 8 were rejected by the examiner on the ground of double patenting for the stated reason that they were not patentably distinct from the claims, particularly claim 5, of the patent issued by the United States Patent Office May 25, 1948 to appellant Eisler, No. 2,441,960, based upon a British application filed February 2, 1943.

Claim 6 was also rejected by the examiner as defining no more than the product of the Eisler patent in which seven claims, all directed to a circuit involving cross connections, the present elected species, were allowed.

The examiner defined the involved issue as resolving itself into a question of appellant's right to obtain broad claims for an invention on which he had already received specific claims, pointing out that the species claimed in claim 5 of the Eisler patent included every step recited broadly and merely differing in scope from the limitations recited in claims 1, 7 and 8 now before the court.

The embossing on the base sheet, more specifically defined by claim 4, was considered by the examiner as an obvious but nowise critical step to facilitate further operations to be performed on the base sheet.

For the reasons hereinbefore described, the examiner finally concluded that appellant was not entitled to extend the period of his patented invention on the ground of a mere difference in the scope of the claims contained in the two applications, citing In re Woodsome, 56 App.D.C. 138, 10 F.2d 1003. See also In re Muskat, 187 F.2d 626, 38 C.C.P.A., Patents, 909.

On remand, the examiner in a supplementary statement of January 18, 1952 acknowledged appellant's right to the benefits of section 1, Public Law 690, 35 U.S.C. §§ 101–114, the Boykin Act, but held no provision of such legislation avoided the rejection on the ground of double patenting of claims 1, 4, 6, 7 and 8.

The Board of Appeals affirmed all of the grounds of rejection advanced by the examiner, having explained the basic position of the Patent Office in detail, as noted, for example, in the following excerpt from its decision:

"Appellant bases much of his argument on the fact that claims 1, 4, 7 and 8 recite that the metal pattern prepared is flexible and is prepared on a flexible support. This does not differentiate the claims patentably from claim 5 of the patent since it is obvious that the foil layer and the insulation backing layer referred to in claim 5 must be flexible at least to a degree sufficient to permit the folding step recited therein."

A petition for reconsideration submitted to the board was denied with respect to making any change in its decision.

Appellant cites section 121 of Public Law 593, 35 U.S.C. § 121, and argues in his brief to the following effect:

"It is the consistent practice of the Patent. Office that a patent issuing on an application with respect to which a requirement of division has been made shall not be used as a reference either in the Patent Office or in the courts against a divisional application if the divisional application is filed before the issuance of the patent on the parent application."

██ The solicitor notes, however, that the cited statute refers to divisional applications and is not a codification of existing or prior practice but sets up a new practice which provides for the requirement of restriction which shall have been made "under this section." Appellant's parent application matured into a patent May 25, 1948, and section 121 became effective January 1, 1953; thus, the legislation was inapplicable to the situation presented. Manual of Patent Examining Procedure, December 10, 1952, page 2, Change Sheet, paragraph 4(b). See also In re Seebach, 88 F.2d 722, 24 C.C.P.A., Patents, 1101.

We find no error in the decision of the board and feel upon the record presented that it would serve no useful purpose to discuss other points argued by counsel. For the reasons stated, the decision appealed from is affirmed.

Affirmed.