*1355 DYK, Circuit Judge,
dissenting in part.
The majority has adopted a construction of section 121 that significantly expands its coverage. 35 U.S.C. § 121. In my view the majority opinion works an unfortunate and unsupported change in our jurisprudence defining the scope of section 121, and in doing so, loses sight of its purpose. I respectfully dissent.
I
The prohibition against double patenting contained in 35 U.S.C. § 101 represents an important protection against the undue extension of patent rights. It bars patentees from securing an extension of the patent term through the filing of a divisional application that claims the same invention (or an obvious variant) as the original application. See 35 U.S.C. § 101; In re Longi, 759 F.2d 887, 892 (Fed.Cir.1985) (“A double patenting rejection precludes one person from obtaining more than one valid patent for either (a) the ‘same invention,’ or (b) an ‘obvious’ modification of the same invention.”).[1] The policy underlying the double-patenting doctrine “is an important policy because it precludes the improper extension of the statutory term of patent protection for an invention.” Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc., 98 F.3d 1563, 1577 (Fed.Cir.1996); see Geneva Pharms., Inc. v. GlaxoSmithKline PLC, 349 F.3d 1373, 1378 (Fed.Cir.2003). There is no question here but that the inventions claimed in the '086 patent and the '812 patent are either the same invention or obvious variants thereof, and that the '812 patent would typically fall on double patenting grounds. The majority avoids this result through the application of section 121.
Section 121 was adopted as part of the 1952 Patent Act, Pub.L. No. 82-593, 66 Stat. 792 (current version at 35 U.S.C. § 1 et seq.). It was designed to prevent an unfair result under prior law whereby a patentee’s compliance with an examiner’s incorrect restriction requirement (separating out supposedly patentably distinct inventions that were in fact the same or not patentably distinct) resulted in the original application’s being used as a reference against the later divisional application. The use of the original application as a reference could result in a subsequent rejection based on double patenting. Before the 1952 Patent Act, no protection was afforded to patent applications filed as a result of an incorrect restriction requirement. See In re Eisler, 40 C.C.P.A. 913, 203 F.2d 726 (1953). The PTO and the courts were not precluded from rejecting an application filed as a result of a requirement for division based on the very same application from which the subsequent application was divided. See In re Kauffman, 33 C.C.P.A. 755, 152 F.2d 991, 993 (1946); see also In re Isherwood, 46 App. D.C. 507, 512 (D.C.Cir.1917) (holding that an examiner is not estopped from rejecting a divisional application because of an earlier requirement for division). To avoid such a result, a patent applicant was required to appeal an examiner’s requirement for division, see United States ex rel. Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555 (1904), and “his failure to litigate the question was at his peril,” Kauffman, 152 F.2d at 993.
Section 121 was designed to ameliorate the inequity of this rule, and to allow applicants to reasonably rely on an examiner’s restriction requirements. Pfizer, Inc. v. Teva Pharms. USA, Inc., 518 F.3d 1353, 1361 (Fed.Cir.2008). The purpose of the rule was to ensure that “when the existence of multiple patents is due to the administrative requirements imposed by the Patent and Trademark Office ... the *1356 inventor shall not be prejudiced by having complied with those requirements.” Applied Materials, 98 F.3d at 1568. Section 121 thus carved out a narrow exception from the obviousness-type double patenting doctrine, by providing that “[a] patent issuing on an application with respect to which a requirement for restriction ... has been made, or on an application filed as a result of such a requirement, shall not be used as a reference ... against a divisional application or against the original application.” 35 U.S.C. § 121 (emphasis added). Because section 121 can extend the patent term for inventions that are not patentably distinct, we have held that “this court applies a strict test for application of § 121.” Geneva Pharms., 349 F.3d at 1382.
II
I agree with the majority that section 121 is not limited to the first divisional application filed as a result of the restriction requirement, but extends to later divisional applications filed “as a result of’ the restriction and that are consonant with the restriction requirement.
However, as the majority at least purportedly recognizes, the “as a result of’ and consonance requirements must be satisfied by both the reference patent and the challenged patent. Majority Op. at 1352 (citing Bristol-Myers Squibb Co. v. Pharmachemie B.V., 361 F.3d 1343, 1347-48 (Fed.Cir.2004) (“As section 121 has been interpreted by this court, [the patentee] is entitled to invoke the statutory prohibition against use of the [reference] patent ‘as a reference’ against the divisional application that resulted in the [challenged] patent only if the divisional application was filed as a result of the restriction requirement and is consonant with that restriction requirement.”)). Thus, it is not enough that the original application was filed as a result of the restriction requirement; the subsequent contested patent application itself must have been the result of the restriction, and must be consonant with the restriction requirement. See Pfizer, 518 F.3d at 1360 (“[T]he third sentence of [section 121] provides a safe harbor (for patents or applications derived as the result of a restriction requirement) from attack based on the original application (or a patent issued therefrom), or based on applications or patents similarly derived from the same restriction requirement.” (emphases added)). We have held that section 121 should only be used to protect those applicants who are compelled to comply with a restriction imposed by a patent examiner, and who faithfully follow the restriction requirement in a later application. See, e.g., Texas Instruments Inc. v. U.S. lnt’l Trade Comm’n, 988 F.2d 1165, 1179 (Fed. Cir.1993) (holding that the post-restriction addition of a claim to the divisional application was “consonant with the grouping restriction actually imposed by the examiner,” and thus the safe harbor of section 121 applied (emphasis added)).
Ill
In my view, the majority has misinterpreted both the “consonance” and “as a result of’ requirements. Necessary to an understanding of these issues is an understanding of the actual restriction requirement imposed by the examiner in this case. The examiner of the '947 application (the grandparent) imposed a restriction requirement, thus requiring the filing of a later divisional application (the '197 parent application), which later matured into the '086 patent.[2] The examiner imposed the *1357 restriction on the grounds that “each of groups I-V is a patentably distinct invention,” J.A. 577, and that each of the compounds “could be used in each of the materially different processes as set forth in VIII-X,” J.A. 576. The restriction thus inquired the applicant to elect “one of the compound!] group[s] I-V and one of the utility groups VIII-X,” or “one of the process groups VI and VIL” J.A. 577. Accordingly, the applicants elected to prosecute claims directed to the invention of Group II (pyrrolidinyl-substituted benzothiazole compounds) and Group IX (a method for treating Parkinson’s disease), resulting in the '374 patent (the grandparent). Boehringer Ingelheim Int’l GMBH v. Barr Labs., Inc., 562 F.Supp.2d 619, 625 (D.Del.2008).
The '197 application (the parent), a divisional of the '947 application, was not consonant with the original restriction requirement, as the applicants combined in a single application claims that the original examiner determined were drawn to separate inventions, namely Groups VIII, IX, and X of the '947 application.[3] The child application (the '671 application) was also not consonant because it contained separate inventions, namely claims encompassing Groups I, III, IV, and V of the '947 application.[4]
Despite the fact that the '197 and the '671 applications impermissibly combine claims drawn to independent and distinct inventions identified by the original examiner, the majority concludes that the consonance requirement is met. The majority concludes that the requirements of section 121 are met because “[n]one of the inventions claimed as between the '374 original patent, the '086 division, and the '812 division of the division, crosses the examiner’s lines of demarcation of inventions identified in the restriction requirement.” Majority Op. at 1354. It is unclear what the majority means by stating that the “inventions” here did not cross the examiner’s “lines of demarcation of inventions.” It is not the inventions that must preserve the examiner’s line of demarcation among separate inventions, but rather, the applications that must be consonant with the restriction requirement. Here it is clear that the patent examiner’s line of demarcation between independent and distinct inventions was not preserved, as is required by our case law, because both the parent and the child applications combined distinct inventions.
*1358 In effect, it appears that the majority is dispensing with the requirement that the restriction requirement be followed at all in any later divisional applications, so long as the original application in which the restriction requirement was imposed complies with the restriction. This is apparently what the majority means in stating that what consonance requires is that “the claims prosecuted in two or more applications having common lineage in a divisional chain honor, as between applications, the lines of demarcation drawn by the examiner to what he or she considered independent and distinct inventions in the restriction requirement.” Majority Op. at 1354.
To support its position that later divisional applications need not comply with the restriction requirement, the majority cites language from our case law for the proposition that section 121 is satisfied if later divisional applications are limited to the “non-elected invention or inventions” of the parent application. This suggests to the majority that separate inventions may be combined in a single later application. But our decisions do not in fact countenance this. In my view, the majority’s decision is inconsistent with our case law clearly establishing that “[cjonsonance requires that the line of demarcation between the ‘independent and distinct inventions’ that prompted the restriction requirement be maintained.” Gerber Garment Tec., Inc. v. Lectra Sys. Inc., 916 F.2d 683, 688 (Fed.Cir.1990); see Geneva Pharms., 349 F.3d at 1381 (“Section 121 shields claims against a double patenting challenge if consonance exists between the divided groups of claims and an earlier restriction requirement.” (citing Symbol Techs., Inc. v. Opticon, Inc., 935 F.2d 1569, 1569 (Fed.Cir.1991))); Applied Materials, 98 F.3d at 1568 (noting that “the examiner’s demarcation among the separate inventions should be preserved” (emphasis added)).
In Texas Instruments Inc. v. U.S. International Trade Commission, 988 F.2d 1165 (Fed.Cir.1993), the original examiner found that the claims of the original application were drawn to three separate inventions, and grouped the claims in Groups I, II, and III. Id. at 1179. The applicant duly followed the restriction requirement laid out by the examiner and separated out the claims into three separate patents, with claims drawn to Group I issuing as the original patent (the '238 patent), and claims drawn to Group II and III issuing as divisional of the parent application (the '027 and the '764 patent, respectively). However, the examiner’s description of what was contained in Group III differed from the actual grouping in the restriction requirement, which in fact incorporated a claim drawn to Group II. The Commission held that the “actual restriction groupings, not the written descriptions thereof, control for purposes of ascertaining if subsequent amendments to original claims are consonant with the substantive restrictions drawn by the examiner.” Id. We adopted this reasoning, and concluded that the inclusion of the claim drawn to Group II in the '764 patent was “consonant with the grouping restriction actually imposed by the examiner.” Id. (emphasis added). In other words, the later application was consonant because the applicant followed the original examiner’s groupings. That was not done here, and consonance accordingly was not maintained.
Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc., 98 F.3d 1563 (Fed.Cir.1996), is to the same effect. There, the examiner issued a restriction requirement and divided the claims into three groups: an oven-type radiation-heated reactor, a reactor with means for introducing gaseous reactants, and a gaseous epitaxial coating process. The applicant initially elected the radiation-heated reactor, then “duly prosecuted *1359 the other two inventions in separately filed divisional applications.” Id. at 1567. During the prosecution of the patent for the gaseous epitaxial coating process, the claims were amended to include non-epitaxial deposition as well as epitaxial deposition. The alleged infringer in that case argued that consonance was lost when the claims were enlarged. However, the original examiner had not determined that non-epitaxial deposition and epitaxial deposition were separate inventions. The court held that section 121 still applied. Id. at 1569. The amendments to the process claims did not violate the restriction requirement, “for the process claims remained in separate patents from the apparatus claims although the scope of the process claims was modified.” Id. at 1568 (emphasis added). This language makes clear that the patentee’s conformity with the examiner’s restriction requirement, by separating out the three patentably distinct inventions into three separate applications, was the key to invoking section 121. In other words, later applications must keep separate the inventions that the original examiner identified as being separate. It seems to me plain that the parent and child applications in this case did not satisfy the consonance requirement.
But even if the majority were correct as to consonance, the benefit of the section 121 safe harbor should be denied because the '671 child application which issued into the '812 patent was not filed “as a result of’ the restriction requirement. The only justification the majority offers for concluding that the “as of result of’ requirement is met in this ease is that the restriction requirement was imposed with respect to the grandparent application, resulting in the filing of one or more later divisional applications. But this rationale completely fails to explain why the child is protected from the parent application as a reference. There is in fact no basis for protecting the child against the use of the parent application as a reference, since there is absolutely nothing in the majority’s reading of the original (grandparent) restriction that in any way required separation of the child from the parent. Nor did the examiner of the parent application require separation of the child. The second examiner did not follow the reasoning or views of the first examiner as to the distinctiveness of the various inventions. In other words, the child was not separated from the parent “as a result of’ the restriction requirement, but rather as the result of the applicant’s voluntary choice. Since the separation was not “due to the administrative requirements imposed by the Patent and Trademark Office,” id. at 1568, the child application should not be afforded the protections of section 121 with respect to the parent application.
The majority opinion not only fails to follow a “strict test” for the application of section 121, see Geneva Pharms., 349 F.3d at 1382, it fails to recognize any meaningful restriction on section 121’s application in the present context. Under the majority’s theory, if an applicant faced with a restriction requirement filed a series of divisional applications claiming essentially the same invention or an obvious variant again and again, each successive application would be protected from all of the earlier applications — whether or not the later applications followed the original restriction requirement. None of the earlier applications could be cited as prior art. Thus, the applicant could thereby have achieved multiple unjustified extensions of the patent term. The potential for this abuse is illustrated in this case: by breaking up the parent and child applications while ignoring the line of demarcation between patentably distinct inventions drawn by the first examiner, Boehringer was able to extend the term of the '812 patent (the child) six months longer than the '086 *1360 patent (the parent’s) term, although the '812 patent was obvious in light of the '086 patent. The majority’s opinion is devoid of any justification for this untenable result. It hardly requires argument to demonstrate that Congress could not have intended section 121 to operate in this perverse fashion.
I respectfully dissent.

. The prohibition against obviousness type double patenting is based on an interpretation of the statute. See In re Longi, 759 F.2d at 892.

. For purposes of clarity, I provide a timeline of the various patents and applications at issue:
December 19, 1985: Boehringer files the '947 patent application.
*1357 September 4, 1986: PTO examiner issues a restriction requirement forcing Boehringer to separate the inventions claimed in the '947 patent application.
November 23, 1987: Boehringer files the '197 application, a divisional of the '947 application.
March 15, 1988: '374 patent issues from the '947 patent application.
October 12, 1988: Boehringer files the '671 application, a divisional of the '197 application.
June 27, 1989: '086 patent issues from the '197 application.
December 12, 1989: '812 patent issues from the '671 application.

. The '197 application originally contained all of the claims of the original '947 application, but, following a rejection, the applicant amended the '197 application so that it claimed methods of using benzothiazole compounds to treat certain medical conditions (high blood pressure, Parkinson's disease, and schizophrenia), excluding the method of using Group II compounds in accordance with the method of Group IX (i.e. the use of pyrrolidinyl-substituted compounds to treat Parkinson’s disease), which was elected in the '947 grandparent.

. Like the '197 application, the '671 application originally contained all of the claims of the '947 grandparent application, but it was later amended to include only compound claims other than those directed to the pyrrolidinyl-substituted benzothiazoles previously claimed in the '374 patent.